UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 08 CR 148 |
| | ) | |
| v. | ) | Hon. Matthew F. Kennelly |
| | ) | |
| STEVEN CROSS | ) | |

**GOVERNMENT'S COMBINED RESPONSE TO DEFENDANT'S
MOTIONS TO SUPPRESS EVIDENCE AND TO QUASH ARREST**

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, hereby files this response to defendant Steven Cross's "Motion to Suppress Quash Arrest and Evidence" and "Motion to Suppress Evidence Found During a Warrantless Search of Defendant's Vehicle" (hereinafter "defendant's motions").

**I.   Background**

For purposes of defendant's motions, the material facts are not disputed, and so no evidentiary hearing is required. *See United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004). The government provides additional facts in this subsection for further context. The government would prove these additional facts at trial through, among other sources, the recorded 911 telephone call and the testimony of Illinois State Police Troopers Rigo Montes ("Trooper Montes") and Patrick McGreal ("Trooper McGreal"). Although defendant did not refer to these additional facts in his two motions, the government believes that these facts are not disputed nor material for purposes of defendant's motions, and thus no hearing is required.

On July 6, 2007, defendant was driving northbound on the Dan Ryan in a black Ford Taurus with license plate G126722 , when, according to defendant's statement to law enforcement, off duty

officer Chicago Police Officer George Porter ("Porter") cut off defendant. In response, defendant pulled up next to Porter's vehicle and pointed a gun at Porter.[1]

Porter called 911, stating that another driver had pointed a gun at Porter and describing their location on the Dan Ryan expressway. The 911 call was routed to the Chicago Police Department ("CPD"). On learning that Porter was driving on the Dan Ryan expressway, the CPD 911 dispatcher connected Porter through to the Illinois State Police ("ISP") 911 dispatcher, while CPD 911 remained on the line. Porter told the 911 dispatchers that the driver was a black male in a black Ford Taurus with the license plate G126722. Porter informed the 911 dispatchers that Porter was following the Ford Taurus as the Taurus merged onto another highway that Porter originally identified incorrectly as the "Edens" and then the "Stevenson I-290 West," before clarifying to 911 dispatchers that the highway was I-290 West, which is the Eisenhower expressway.

Porter continued to update the 911 dispatchers as to their locations and as to the events, telling 911 dispatchers that he had spotted an ISP vehicle, driven by Trooper Montes. Still on the telephone with 911, Porter drew the attention of Trooper Montes, shouting to Trooper Montes through open car windows that the driver of the black Ford Taurus had pointed a gun at Porter and that Porter was a police officer.[2] These statements are audible on the 911 recording. The ISP 911 dispatcher ensured that the CPD 911 dispatcher had sent CPD officers to assist the ISP trooper. Porter then remained on the telephone with 911 throughout most of the encounter.

---

[1] After being apprised of his *Miranda* rights, defendant provided these statements orally to law enforcement at the police station following his arrest.

[2] At that point in the 911 call, Porter also identified himself to the 911 dispatchers as Officer Porter and provided his star number, stating that he was off duty.

Having learned from Porter that the individual in the black Ford Taurus had pointed a gun at Porter, Trooper Montes began pursuing the black Ford Taurus as he called for assistance to ISP as well as CPD through his CPD portable radio. Trooper McGreal and several CPD units responded. When Trooper Montes saw that backup was arriving, Trooper Montes activated his lights. ISP and CPD units effected a stop of the black Taurus. Porter pulled his car over as well, some distance behind Trooper Montes's vehicle and remained by his vehicle.

Law enforcement officers ordered the driver, later identified as defendant Steven Cross, and his front-seat passenger, later identified as Francine Blackmon ("Blackmon"), out of the vehicle. Defendant and Blackmon were handcuffed behind their backs. At that point, Porter identified defendant as the individual who had pointed a gun at him.

Law enforcement officers conducted a patdown of defendant and Blackmon, finding a clear plastic bag of cannabis down the front of Blackmon's pants. Around that time, defendant began to yell that Porter had cut him off. Trooper McGreal told defendant that they were responding to a call about a person having a gun. Cross denied having a gun. Law enforcement then placed defendant and Blackmon in the back of separate squad cars.

CPD officers began searching defendant's vehicle, and communicated to Trooper Montes that they had did not find a gun. Trooper Montes then spoke with Porter, who related that the gun was a blue steel revolver. After speaking with Porter, Trooper Montes went to look inside defendant's car and spotted two U-shaped metal prongs. Trooper Montes recognized the U-shaped metal prongs from a previous training that he had attended on methods that defendants use to conceal firearms and narcotics in vehicles. At that training, Trooper Montes learned that certain Ford Taurus models have spaces where items could be concealed behind the radio, and the U-shaped prongs could

be used to remove the radios. Based on this training, Trooper Montes hooked the metal prongs into defendant's car radio and removed the radio from the dashboard.[3] Once Trooper Montes removed the radio, Trooper Montes located behind the radio a nylon holster containing Fabrica D'Armas, Model 3, .22 caliber revolver, bearing the serial number 41426, and loaded with two rounds of ammunition.

As a result of this incident, the state charged Cross with aggravated assault, unlawful use of a weapon by a felon, and unlawful possession of cannabis.[4] Subsequently, a federal grand jury subsequently charged defendant in a two-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and possession of cannabis, in violation of 21 U.S.C. § 844.

**II.     Law enforcement had probable cause to stop defendant and search his car under the automobile exception to the Fourth Amendment.**

Defendant first argues that Porter's 911 call did not contain sufficient indicia of reliability to provide law enforcement with probable cause to stop defendant based on Porter's failure to identify himself to the 911 operators until after he had already flagged down Trooper Montes, and Porter's confusion over expressway names when he was updating 911 on defendant's location.[5]

---

[3]In defendant's later oral statement to law enforcement, defendant admits to concealing the gun behind the car radio after defendant noticed that Porter was following him.

[4]Defendant also received citations for driving without a license and operating a vehicle without insurance.

[5]Defendant has identified no material disputed facts, nor does the government believe any exist so as to require an evidentiary hearing. For the court's convenience, the government has attached the transcript from the 911 tape, to which ATF Special Agent Hamilton Beal has listened, provided his corrections in ink, and signed as to its accuracy. Defendant was timely provided a copy of the 911 tape in Federal Rule of Criminal Procedure 16.1 discovery. The government obtained the attached certified transcript of the 911 tape in response to defendant's instant motions on June 16,

Defendant premises his argument on only a partial account of the circumstances. Specifically, defendant fails to address Trooper Montes's initial encounter with Porter while Porter was on the telephone with 911. Trooper Montes ultimately stopped the defendant's vehicle only after Porter flagged down Trooper Montes on the Eisenhower expressway and shouted to Trooper Montes that the individual in the black Ford Taurus ahead of Trooper Montes—later, identified as the defendant—had pointed a gun at Porter. *See Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003) ("The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate."). Porter's communication with Trooper Montes was face to face, and Trooper Montes was able to confirm that there was a black Ford Taurus ahead of him, to which Porter was referring. Furthermore, the circumstances involved a gun on a highway, and thus provided a level of exigency for the safety of others that made Trooper Montes's reliance on Porter's statements particularly appropriate. *See United States v. Elder*, 466 F.3d 1090, 1091 (7th Cir. 2006) (upholding warrantless "look-see" into a barn valid based on exigent circumstances of concern for officers' and 911 caller's safety where circumstance likely to involve weapons). Finally, once defendant was pulled over, Porter identified defendant as the individual who had pointed a gun at Porter. These additional facts, not discussed by defendant in the submitted motions, along with the information Porter provided in the 911 telephone call, are more than sufficient for probable cause.

Because Trooper Montes had probable cause to believe that defendant had committed an offense, the "automobile exception" to the Fourth Amendment applies to these circumstances,

---

2008.

authorizing law enforcement to search defendant's vehicle. Under the "automobile exception" to the Fourth Amendment, a vehicle may be searched without a warrant if there is probable cause to believe that it contains contraband or evidence of a crime. *United States v. Johnson*, 383 F.3d 538, 545 (7th Cir. 2004); *United States v. Wimbush*, 337 F.3d 947, 950 (7th Cir. 2003). The search may encompass all parts of the vehicle where contraband or evidence could be concealed, including, closed and hidden compartments. *See United States v. Ortiz*, 84 F.3d 977, 983 (7th Cir. 1996). The area behind the radio where the gun was found fits within the allowable scope of a search under the "automobile exception," especially given that concealed compartments—such as the area behind the radio in this case—are often used by defendants to hide evidence of crimes, such as guns or narcotics. *See, e.g., United States v. Seymour,* 519 F.3d 700, 704 (7th Cir. 2008) (an example of a criminal organization that, as part of their standard practice, drove cars with hidden "trap compartments" to conceal guns and drugs); *United States v. Reed*, 443 F.3d 600, 604 (7th Cir. 2006) ("It is common for such currency [used in drug transactions] to be wrapped in cellophane so as to minimize the ability for a drug-sniffing dog to detect the drug residue often found on such currency, and to secrete it in a hidden area of a vehicle to escape detection."); *United States v. Willis*, 37 F.3d 313, 317 (7th Cir. 1994) (drugs were concealed inside a removable car radio).

**III.　　The search of defendant's car was valid as a search incident to a lawful arrest.**

In addition, the search of the car was proper as a search incident to a lawful arrest, a determination that defendant even concedes in his motion to suppress, because law enforcement discovered a clear plastic bag containing a substance that appeared to be marijuana in the front of Blackmon's pants. *See Johnson*, 383 F.3d at 545-46. Police may search the passenger compartment of an automobile incident to a lawful custodial arrest to ensure their safety and safeguard evidence.

*New York v. Belton*, 453 U.S. 454, 458-460 (1981); *United States v. Sholala*, 124 F.3d 803, 816-817 (7th Cir. 1997). The search requires no additional justification. *See Virginia v. Moore*, 128 S. Ct. 1598, 1607 (2008). A search of a vehicle incident to arrest extends to the passenger compartment of the vehicle, including any containers, open or closed, found there, such as glove compartments, consoles, receptacles, luggage, boxes, bags and other items capable of holding another object. *See Belton*, 453 U.S. at 460-461 & n.4. This encompasses hidden compartments, such as inside radios or specially designed "traps," and, as applied to this case, the space behind a radio. *See United States v. Veras*, 51 F.3d 1365, 1371 (7th Cir. 1995); *Willis*, 37 F.3d at 317.[6]

### IV.    The search of defendant's car constituted a singular search.

Defendant challenges the search of defendant's vehicle as improper, characterizing the search of defendant's car by CPD officers and Trooper Montes as two separate searches. In making this argument, defendant draws an artificial distinction between the involvement of the CPD officers assisting Trooper Montes and Trooper Montes' own involvement in the search of the car. According to defendant's argument, CPD officers' initial failure to find the hidden gun terminated the search, and thus, when Trooper Montes continued the search of the car a short time later, his actions constituted a "second search" that required a new legal basis, separate from the probable cause to believe that defendant's car contained a gun and/or additional narcotics. Under defendant's theory of "two searches," Trooper Montes was not legally authorized to search defendant's car.

---

[6]Defendant incorrectly states in his motion to suppress that *Willis* justified the search of a removable car radio under the plain-view doctrine. In that case, the officer initially searched a car after seeing a metallic glint and found a gun. Defendant was then arrested. The officer subsequently searched the car again as a search incident to arrest and located narcotics concealed in the removable car radio. *See Willis*, 37 F.3d at 316-17.

Defendant artificially segments the search of defendant's car into two separate searches, when, instead, there was one search of defendant's car—with no intervening event or even a change in location—conducted by several law enforcement officers based on probable cause to believe that defendant's car contained evidence of an offense, namely a gun and/or narcotics. In *Willis*—a case cited by defendant for his argument but actually supports the existence of a singular search—the 7th Circuit held that "We do not believe the requirement that a search incident to arrest be 'contemporaneous' with the arrest means that an officer is forbidden to undertake any intervening act at all between arrest and search." *Willis*, 37 F.3d at 318. That other members of law enforcement began the search before Trooper Montes search the car does not dissipate the authority to search the car under both the "automobile exception" and as a search incident to arrest. Nor is this a case where an "inordinate" amount of time elapsed between defendant's arrest and the relevant search so as to break the causal connection. *Cf. United States v. Robeles-Ortega*, 348 F.3d 679, 683 (7th Cir. 2003) (considering time as a factor in determining if the causal connection between an illegal first search and a legal consensual search has been broken). There was one search justified by both probable cause and as a search incident to arrest.

V.      **Even if the search of defendant's car constituted two separate searches, the "so-called" second search was still valid based on probable cause.**

Even if the court finds Trooper Montes's search to need separate authority from the CPD's officers' search of defendant's car, Trooper Montes's search was still valid based on probable cause. In addition to Porter's flagging down Trooper Montes to inform him that defendant had a gun and identifying defendant at the stop, Trooper Montes went to speak to Porter following the CPD officers' search of defendant's car. In that conversation with Trooper Montes, Porter further described the gun as a blue steel revolver (a description which was subsequently confirmed as

accurate). Armed with this additional information, Trooper Montes went back to defendant's car to search. At that point, Trooper Montes saw the U-shaped metal prongs, which he recognized from his training, in plain view on the floor of the car. Trooper Montes's second conversation with Porter along with his knowledge about the uses of the U-shaped metal prongs that he saw provides sufficient additional probable cause for Trooper Montes's continued search of the defendant's vehicle.

Furthermore, that the initial searching turned up no evidence does not diminish probable cause given that criminals seek to conceal contraband and evidence of an offense. *See, e.g., Seymour,* 519 F.3d at 704 (an example of a criminal organization that, as part of their standard practice, drove cars with hidden "trap compartments" to conceal guns and drugs); *Johnson*, 383 F.3d at 545-46. For example, in *Willis*, the police officer found concealed narcotics only after pulling out the removable radio from the car dashboard and peering inside the radio. *Willis*, 37 F.3d at 317. In *Veras* and *Ortiz*, law enforcement had to pry open hidden compartments to find drugs and narcotics in defendants' cars. *See Veras*, 51 F.3d at 1371; *Ortiz*, 84 F.3d at 982. Defendant effectively concealed his gun, making it more difficult for law enforcement to find. Because of this effort, law enforcement's discovery of the gun took a little longer. But defendant should not benefit from this extra time spent by law enforcement by being allowed to characterize the longer search as unauthorized.

## VI. Conclusion

For the reasons set forth above, the government respectfully requests that the Court deny defendant Cross's motions to suppress evidence and quash the arrest.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

s/ Halley B. Guren
HALLEY B. GUREN
Assistant United States Attorneys
219 S. Dearborn St., Fifth Floor
Chicago, IL 60604
(312) 886-4156

Date: June 18, 2008

## CERTIFICATE OF SERVICE

     The undersigned Assistant United States Attorney certifies that in accordance with FED. R. CRM. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following documents:

**GOVERNMENT'S COMBINED RESPONSE TO DEFENDANT'S
MOTIONS TO SUPPRESS EVIDENCE AND TO QUASH ARREST**

were served pursuant to the district court's ECF system as to ECF filers.

                                          s/ Halley B. Guren
                        By:   HALLEY B. GUREN
                              Assistant United States Attorney
                              United States Attorney's Office
                              219 S. Dearborn Street
                              Chicago, Illinois 60604
                              (312)886-4156

Date: June 18, 2008