**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 08 CR 00148 |
| v. ) | |
| ) | Judge Matthew Kennelly |
| **STEVEN CROSS,** ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S CONSOLIDATED REPLY TO THE GOVERNMENT'S**
**COMBINED RESPONSE TO DEFENDANT'S**
**MOTIONS TO SUPPRESS EVIDENCE AND TO QUASH ARREST**

Defendant, Steven Cross has the following Reply to the Government's Combined Response to Defendant's Motions to Suppress Evidence and to Quash Arrest:

The government has correctly characterized the Defendant's motions as challenging the initial stop of his vehicle, his subsequent detention after the search of his vehicle did not confirm any of the information the tipster had provided to the officers, and a second search of his vehicle was not valid as a search incident to arrest, or otherwise. The government begins by providing "additional facts" for "further context." Some of those facts would be inadmissible at any hearing (including any statements made by the Defendant at the police station following his arrest). Regardless, from the pleadings the undisputed facts that follow are established.

An individual named George Porter called the Chicago Police 911 Center and claimed that Defendant, while driving his vehicle, had pointed a gun at Porter, who was likewise traveling in his vehicle. At some point during the discussion, Porter identified himself as an off-duty Chicago police officer. While following Defendant's vehicle, Porter saw an Illinois State Trooper, gaining his attention. The trooper, as well as other Chicago police officers, followed

Defendant's vehicle, conducting a full custodial stop while all the vehicles were traveling westbound on the Eisenhower expressway.  Defendant and his passenger were ordered out of the vehicle (likely at gunpoint), handcuffed, and made to lie upon the ground.  They were searched before being placed in separate police vehicles, while still handcuffed.[1]  Chicago police officers searched the vehicle Cross had been driving, advising Trooper Montes, after they completed their search, that they had not found any gun.  Montes then again interviewed Porter, and conducted additional investigation, before beginning his own search of Cross's vehicle.  During his search he saw two u-shaped metal prongs that he believed could be used to remove the radio.  Montes utilized the prongs to remove the radio, locating the weapon at issue in this case behind where the radio had been.

A determination of whether the officers had probable cause to stop Defendant's car and to arrest him, acting as they did, is simply dependent on a common sense interpretation of the facts.  Probable cause exists where "under the totality of the circumstances, it is fairly probable that the car contains contraband or evidence."  *United States v. Webb*, 83 F.3d 913, 916 (7th Cir. 1996).

The government has claimed that this was a valid search incident to the Defendant's arrest.  (Apparently for either an aggravated assault or the cannabis.)  The Court will have to make its' own assessment of whether there was probable cause to arrest the Defendant for cannabis found on someone else, which he did not, at the scene, admit possessing, or for a weapon that could not be found.

---

[1] The State Police reports refer to the search of Defendant Cross as "a custodial search," while referring to the search of the passenger that led to the recovery of the marijuana as "a protective pat down."  Notwithstanding the fact the cannabis was found on the passenger, Cross was charged with its' possession in both the State and Federal cases.

The government tries to justify this search as necessary for public safety, citing *United States v. Elder*, 466 F.3d 1090 (7th Cir. 2006). The claim could not be farther from the truth. While both searches were taking place, Defendant was in a police car, in handcuffs, under arrest. Certainly after the police had completed their first search they were aware that there was no one else in the vehicle, and there were no weapons, or other dangerous instrumentalities immediately accessible.

Assuming, arguendo, that their search was incident to a lawful arrest, the initial police search of the vehicle was a permissible search incident to arrest. *New York v. Belton*, 453 U.S. 454 (1981). After the officers had insured that the Defendant did not have a weapon and that there was no weapon in the area that had been within his immediate control, there was no longer any issue of safety, and no reason to conduct any further search of the vehicle incident to the arrest of the Defendant. Simply put, if the initial search was a valid search conducted because there was probable cause to believe that a crime had been committed, the officers failure to discover the weapon or any other contraband vitiated probable cause. Rather than supporting the stop of Defendant's vehicle, the initial search established that the information, after investigation, was unreliable. On the other hand, if the government seeks to justify the search as one conducted pursuant to a lawful arrest, the rationale behind allowing such a search was satisfied by the initial search, and does not support the second more invasive search.

With respect to the two searches of the vehicle, again assuming arguendo probable cause, Defendant does not quarrel with the first search. "A vehicle may be stopped and searched without a warrant if there is probable cause to believe the vehicle contains contraband or other evidence of illegal activity. *United States v. Navarro*, 90 F.3d 1245, 1252 (7th Cir. 1996). The problem is that the search that was conducted did not reveal any evidence of contraband or

illegal activity. Accordingly, whatever information the police were acting upon was not confirmed by their search. Any probable cause that may have existed, if probable cause had existed, no longer did. Even if the information was initially reliable the police investigation proved that to no longer be the case. Even if the automobile exception to the warrant requirement had permitted the initial search, that search had been completed. The automobile exception does not allow for repetitive searches, it allows a singular search.

The government relies upon *U.S. v. Willis 37 F.3d 313 (7th Cir. 1994),* as justification for the removal of the radio. Their reliance is misplaced for several reasons. First, *Willis* addressed the propriety of an inventory search, not a search incident to arrest. The government does not argue the search of Cross's car was an inventory search.

Secondly, the radio in *Willis* was a removable car radio. A removable car radio slides in and out of a base, as an anti-theft measure. It does not require the use of tools in order to be removed. To the contrary, Cross's radio could only be removed with two (2) tools. It is as different as having a fold down backseat to access a trunk versus requiring a key to open from the outside (i.e. access from the passenger compartment vs. no access). Here, the officer had to disassemble the car. See United States v. Arnold, 388 F.3d 237 (7th Cir. 2004).

Finally, and notably, the government does not argue the search was valid under *Carroll v. United States, 267 U.S. 132 (1925),* or its progeny.

Because under any of the foregoing scenarios, the action of the government was illegal, this Court should suppress the weapon recovered and grant any further and other relief as may be just under the circumstances.

Respectfully Submitted,
**Steven Cross, Defendant**

By: *s/Steven A. Greenberg*
  One of His Attorneys

**STEVEN A. GREENBERG**
**820 W. JACKSON, SUITE 310**
**CHICAGO, ILLINOIS  60607**
**(312) 879-9500**